# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **MIRA VISTA VILLAS, L.L.C.,** | § | **CASE NO. 10-42223 -11** |
| | § | |
| **Debtor,** | § | |
| | § | |
| | § | |
| **MIRA VISTA OAK GATE, L.L.C.,** | § | **CASE NO. 10-42224-11** |
| | § | |
| **Debtor.** | § | **Jointly administered under** |
| | § | **CASE NO. 10-42223-11** |

## DEBTORS' FIRST AMENDED JOINT DISCLOSURE STATEMENT

### DATED DECEMBER 8, 2010

**TO:** **Creditors of Mira Vista Villas, L.L.C. and Mira Vista Oak Gate, L.L.C., Debtors and Debtors-in-Possession**

Contained in the packet of documents which has been sent to you by Mira Vista Villas, L.L.C. ("Vista") and Mira Vista Oak Gate, L.L.C. ("Oaks") (collectively the "Debtors" or "Debtor" as applicable), is this, the Debtors' First Amended Joint Disclosure Statement (the "Disclosure Statement"), the Debtors' First Amended Joint Plan of Reorganization (the "Plan"), the Ballot for Voting on the Plan of Reorganization and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof. Please read all of these materials carefully. Please note that in order for your vote to be counted, you must (1) include your name and address; (2) fill in, date, and sign the enclosed Ballot; and (3) return it to the Debtors' attorney by the date and time specified on the Ballot.

## ARTICLE I - INTRODUCTORY STATEMENT

The Debtors have filed, contemporaneous hereto with the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court"), the Plan in the above-captioned cases (the "Bankruptcy Cases"). Pursuant to the terms of the United States Bankruptcy Code, this Disclosure Statement will be presented for approval to the Bankruptcy Court. Such approval is required by statute and will not constitute a judgment by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

## A.    DISCLAIMERS

ONLY THOSE REPRESENTATIONS SET FORTH IN THIS DISCLOSURE STATEMENT

ARE AUTHORIZED BY THE DEBTORS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER DATE IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. THE DEBTORS ARE UNABLE TO GUARANTEE THAT THE INFORMATION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT IS ENTIRELY WITHOUT ERROR, BUT ALL REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT ALL REPRESENTATIONS ARE AS ACCURATE AS POSSIBLE.

THE SOURCE OF INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS THE DEBTORS OR THEIR AGENTS AND EMPLOYEES AND HAS NOT BEEN SUBJECT TO AN AUDIT UNLESS OTHERWISE SPECIFICALLY NOTED. THE STATEMENTS MADE HEREIN LIKEWISE HAVE NOT BEEN VERIFIED BY DEBTORS' COUNSEL, ALTHOUGH AN ATTEMPT HAS BEEN MADE TO BE CONSERVATIVE AND REALISTIC. NEITHER THE DEBTORS NOR THEIR COUNSEL REPRESENT OR WARRANT THE ACCURACY OF DISCUSSIONS CONTAINED HEREIN REGARDING EVENTS.

AS STATED PREVIOUSLY, YOU ARE URGED TO REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND HOW THOSE TRANSACTIONS WILL AFFECT YOUR CLAIM AGAINST, OR INTEREST IN THE DEBTORS.

IF ANY IMPAIRED CLASS VOTES TO ACCEPT THE PLAN, BUT NOT ALL CLASSES ACCEPT THE PLAN, THE DEBTORS WILL SEEK CONFIRMATION UNDER THE CRAM DOWN PROVISIONS OF § 1129(B) OF THE BANKRUPTCY CODE AND HEREBY GIVE NOTICE OF INTENT TO INVOKE THE CRAM DOWN PROVISIONS OF § 1129(B) IN THAT EVENT.

## B.     BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a Chapter 11 case, section 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect from a debtor any claims which arose prior to the bankruptcy filing or otherwise to interfere with a debtor's property or business.

Under Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and equity interest holders in the formulation of a plan of reorganization.

For the first 120 days after the filing of a Chapter 11 bankruptcy petition, the debtor is the only party who may file a plan of reorganization in the bankruptcy case, which is generally referred to as "exclusivity." Once exclusivity ends, any party in interest may file a plan of reorganization. The legal requirements for court approval, called "confirmation," of a plan are discussed on Page 14 of this Disclosure Statement.

## C.    THIS DISCLOSURE STATEMENT

Why You Have Received This Disclosure Statement. You have received this Disclosure Statement because the Debtors have proposed a Plan with the Bankruptcy Court in order to satisfy their debts and provide for a reorganization of the Debtors' business. The Bankruptcy Court held a hearing and approved this Disclosure Statement on December 8, 2010. A copy of the Plan is enclosed with the materials that you have received. This Disclosure Statement, as required by 11 U.S.C. § 1125, is being provided to all known Creditors and other parties-in-interest whose claims are impaired in connection with the solicitation and acceptance of the Plan proposed by the Debtors.

Purpose of this Disclosure Statement. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the Holders of Claims against the Debtors to make an informed judgment in exercising its rights either to accept or reject the Plan. Terms used in this Disclosure Statement are defined in Article II of the Plan, and the terms should be read together with those definitions.

Purpose of the Plan. The purpose of the Debtors' Plan is to provide a mechanism for the reorganization of the Debtors' assets and for the payment of the Debtors' Creditors. The Debtors developed the Plan, and believe that the Plan is more attractive than other alternatives, such as conversion to Chapter 7 liquidation or dismissal of the Bankruptcy Case. EACH CREDITOR IS URGED TO READ THE PLAN PRIOR TO VOTING.

Bankruptcy Court Approval of this Disclosure Statement. After a hearing on notice, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the Classes being solicited to make an informed judgment about the Plan.

Sources of Information. The information contained in this Disclosure Statement has been submitted by the Debtors unless specifically stated to be from other sources. Certain of the materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While the Debtors have made every effort to retain the meaning of such other instruments or the portions transposed, the Debtors urge that any reliance on the contents of such other instrument should depend on a thorough review of the instruments themselves.

Only Authorized Disclosure. No representations concerning the Plan are authorized by Debtors or the Bankruptcy Court other than as set forth in this Disclosure Statement. Any representations or inducements made by any person to secure your vote which are other than herein contained should not be relied upon, and such representations or inducements should be

reported to counsel for the Debtors, who shall deliver such information to the Bankruptcy Court.

Voting on the Plan. **YOUR ACCEPTANCE OF THE PLAN IS IMPORTANT.** A creditor or interest holder, in order to vote on the Plan, must have filed a proof of claim or interest on or before the Bar Date, unless scheduled by the Debtors as not disputed, liquidated or contingent. Any creditor scheduled as not disputed, liquidated and not contingent is, to the extent scheduled, deemed to have filed a claim and, absent objection, such claim is deemed allowed. A creditor or interest holder may vote to accept or reject the Plan by filing out and mailing to counsel for the Debtors the ballot which has been provided in this package of information.

In order for the Plan to be accepted by a class of creditors, more than one half (1/2) in number and at least two-thirds (2/3) in amount of such class of claims must vote to accept the Plan. Only those claim holders that actually vote are considered in the calculations. In order for the Plan to be accepted by interest holders, at least two-thirds in amount of interests must vote to accept the plan. Again, only voting interest holders are considered in the calculation. You are, therefore, urged to fill in, date, sign and promptly mail and/or fax the enclosed ballot which has been furnished to you to counsel for the Debtors as follows:

> **Vickie L. Driver**
> **Coffin & Driver, PLLC**
> **7557 Rambler Rd., Suite 110**
> **Dallas, TX 75231**
> **FAX 214.377.4858**
> **email: vdriver@coffindriverlaw.com**

**Please be sure to complete properly the form and identify legibly the name of the claimant or interest holder.**

The Court has fixed midnight on January 20. 2010, as the last date by which ballots must be served on counsel for the Debtors. Ballots may be received via facsimile, email, or mail by such date; however, the original must be received before January 24, 2010. Except to the extent allowed by the Bankruptcy Court, Ballots that are received after such time may not be counted. Ballots of Holders of impaired Claims received pursuant to this solicitation and which are signed but are not expressly voted for acceptance or rejection of the Plan will be counted as Ballots for accepting the Plan. A Ballot accepting the Plan may not be revoked, except by order of the Bankruptcy Court.

## ARTICLE II - BACKGROUND FACTS

### A.    HISTORY OF THE DEBTORS

The Debtors purchased, as tenants-in-common, a 304 unit apartment community located at 350 Continental Drive, Lewisville, Texas 75067, commonly referred to as the Mira Vista Ranch (the "Ranch"). The Ranch consists of thirteen (13) separate three-story buildings with one to three bedroom apartments ranging from approximately 750 to 1,300 square feet. The

monthly rental rates for these apartments range from $650.00 to $1,200.00. The Ranch offers luxury amenities, such as a resort style pool and a fully equipped fitness center. The Ranch was approximately 93% leased as of the Petition Date and generally generates approximately $228,000 in monthly revenues. Attached hereto as **Exhibit 1**, is a copy of Debtors' historical occupancy levels and rent collections for Mira Vista Ranch. The Debtors continue to operate the Ranch as debtors-in-possession.

## B.    THE DEBTORS' LOAN

Debtors' financing was provided by Lender. All of the Debtors' assets served as collateral to secure the indebtedness in the amount to be determined by this Court pursuant to Section 506(a).

## C.    EVENTS LEADING UP TO BANKRUPTCY

The Debtors' bankruptcy arose primarily as a result of immediate and long term cash flow concerns associated with the refinance of its secured loan obligations jointly owed to Lender.

The Debtors began negotiations with the Lender regarding a potential refinance of the Property on or about April 7, 2009. During this time, the Debtors and the Lender renegotiated the Note, providing for a reduction in the minimum payment to allow the Debtors additional cash to catch up with other obligations while keeping the loan in good standing. In exchange, the Lender required the Debtors to market the property for sale and moved the maturity date from December 2010 to May 1, 2010. The Debtors attempted to secure a loan through the U.S. Department of Housing and Urban Development (the "HUD Loan") and submitted their completed loan application packet along with a letter from Lender to HUD agreeing to accept $19,000,000.00 to release their first lien on the Property.

The Debtors received the HUD Loan commitment on May 10, 2010 and signed the HUD Loan commitment on May 13, 2010.

By late May 2010, the Lender began to express hesitancy on the HUD Loan closure. By early June, Weir Goodwin communicated the Lender's "change of heart," deciding that rather than honor the $19,000,000.00 reduced payoff, they would rather foreclose on the Property than allow the Debtors the ability to close the HUD Loan and retain ownership and operation of Mira Vista Ranch. Shortly thereafter, the Lender posted the Mira Vista Ranch for foreclosure.

Once the Lender withdrew from negotiations and took legal action to enforce the written terms of the loan, the Lender placed the alternative financing at risk. Thus, the Debtors filed these Chapter 11 Cases to continue the already on-going HUD approval process, and to fully vet potential investors and sale opportunities.

## D.    ASSETS AND LIABILITIES AT THE TIME OF THE FILING

Attached hereto as **Exhibit 2** are copies of the two (2) Summaries of the Debtors'

Schedules reflecting the Debtors' estimation of their assets and liabilities as of July 5, 2010. Complete copies of the Debtors' Schedules are available upon written request submitted to the office of Counsel for Debtors via either facsimile at (214) 377-4858 or via email at vdriver@coffindriverlaw.com.

## E.     SIGNIFICANT EVENTS IN CHAPTER 11

Joint Administration. On July 8, 2010, the Debtors sought joint administration of their Chapter 11 Cases [Doc. No. 5]. The Court entered an order on July 13, 2010 [Doc. No. 16] directing the procedural consolidation and joint administration of the Chapter 11 Cases in accordance with Federal Rule of Bankruptcy Procedure 1015(b).

Employment of Legal Counsel. On July 22, 2010, the Debtors sought to employ the law firm of Coffin & Driver, PLLC, as counsel for the Debtors [Doc. No. 42]. On August 9, 2010, the Bankruptcy Court entered an order approving the employment of Coffin & Driver, PLLC as counsel for the Debtors [Doc. No. 58].

Cash Collateral/Cash Use Objection. The Debtors filed an Emergency Motion for Use of Cash Collateral on July 8, 2010 [Doc. No. 7]. The Court granted the motion in an interim order dated July 14, 2010 [Doc. No. 20]. Lender filed an objection to the Debtors' use of cash on July 16, 2010 [Doc. No. 30] and Debtors filed a Reply and Brief in Support on July 19, 2010 [Doc. No. 37]. The Court, after considering the Debtors' Motion, Lender's Objection, the Debtors' Reply, and the arguments and evidence presented on the record at the hearing held on July 20, 2010, found that there was a collateral assignment of rents and that the rents constituted the Lender's cash collateral as described in the order that was entered on July 26, 2010 [Doc. No. 45].

Lender's Motion for Relief from the Automatic Stay. On July 28, 2010 Lender filed a Motion for Relief from the Automatic Stay as to the Property [Doc. No. 47]. The Debtors filed their Objection to the same on August 11, 2010 [Doc. No. 58]. This matter was heard by the Court at a hearing on October 26, 2010, at 9:30 a.m., which was continued in part until November 8, 2010 at 10:00 a.m. At the hearing on November 8, 2010, the Court issued a ruling from the bench determining that relief from stay should be conditioned upon the Debtors' ability to obtain approval of a disclosure statement by December 31, 2010 or the confirmation of a plan of reorganization by February 15, 2010. An order on the Lender's Motion with such findings was entered on December 7, 2010 [Doc. No. 145].

Post-Petition Operations of Debtors. The Debtors' Monthly Operating Reports reflecting post-petition operations through August 2010 are attached hereto as **Exhibit 3** and incorporated herein by reference.

## ARTICLE III - SUMMARY OF THE PLAN

## A.     OVERVIEW OF THE PLAN

THE FOLLOWING DISCUSSION IS A GENERAL OVERVIEW OF THE PLAN

ONLY. IT IS NOT INTENDED TO MODIFY THE TERMS OF THE PLAN IN ANY WAY. THE PLAN IS ENCLOSED WITH THIS DISCLOSURE STATEMENT. CREDITORS ARE URGED TO READ THE PLAN IN ITS ENTIRETY BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN.

The Plan provides for a reorganization of all liabilities owed by the Debtors, as described herein.

## B.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan classifies and treats various classes of creditors of the Debtors' estates. The following is a summary of treatment of certain creditor claims which are provided for in the Plan that apply to all the Debtors:

### UNCLASSIFIED ADMINISTRATIVE CLAIMS.

Administrative claims consist of any claim for payment of any cost or expense of administration of the Chapter 11 Bankruptcy Proceedings entitled to priority in accordance with sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating their business from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtors' Estate under Chapter 11 of Title 28, United States Code.   Except to the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which become Allowed Claims against the Debtors after the Effective Date of the Plan shall be paid in full in cash by the Reorganized Debtors on or before ten (10) Business Days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court. Administrative Claims against the Debtors for professional fees approved pursuant to 11 U.S.C. § 330 shall be paid by the Reorganized Debtors upon the entry of an order allowing such claim. For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim.

### ALLOWED TAX PRIORITY CLAIMS.

Allowed Tax Priority Claims consist of any Allowed Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.  Allowed Tax Priority Claims shall be paid by the Debtors, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on January 1, April 1, July 1, and October 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in section 1129(a)(9)(C) of the Bankruptcy Code. The Debtors believe there will be no such claims.

The remaining claims and equity interests are divided into the following classes by Debtor entity:

1. **VILLAS DEBTOR**

   CLASS 1: SECURED CLAIM OF LENDER

   The Class 1 Claim of Lender shall be treated as a first priority, fully perfected, and unavoidable Secured Claim, secured by all of the assets of the Reorganized Debtors. The Secured Claim shall consist of the following amounts: (i) principal in the amount of $21,657,145.00, less any amounts paid by either of the Debtors to the CF CB Lender, LLC; Debtors' pre-petition lender and successor-in-interest to Wrightwood Capital Lender, LP (the "Lender") after the Petition Date through the Effective Date ("Principal"); (ii) Additional Interest in the amount of $433,000.00 (the "Additional Interest"); (iii) Deferred Interest in the amount of $584,376.10 (the "Deferred Interest") (the "Additional Interest" and the "Deferred Interest" are collectively referred to herein as the "Maturity Interest"); and (iv) and pre-petition Default Interest in the amount of $195,739.73. Further, it shall not be an Event of Default (as defined in the Loan Documents) for the Reorganized Debtors to effectuate a "roll-up" of their entities into a single special purpose entity. The Lender's Claim shall be treated in one of the following ways, at the option of the Lender (to the extent neither option is elected by the deadline to submit ballots, the Lender shall be deemed to have chosen Option One):

   (a) Option One: (i) The Reorganized Debtors shall pay the Lender, on the Effective Date, a sum in the amount of $200,000.00 (the "Loan Modification Fee"); (ii) the maturity date on the note securing the Class 1 Claim shall be extended to a date that is four (4) years after the Effective Date (the "Option One Maturity Date"); (iii) interest shall accrue on the Principal at the non-default rate of interest contained in the Loan Documents, so long as the Reorganized Debtors remain current on their obligations under the loan documents after the Effective Date; (iv) in the event that the Reorganized Debtors pay off the balance of the Class 1 Claim in full prior to the Option One Maturity Date, the Lender shall waive the following sliding scale percentages of the Maturity Interest, thereby reducing the amount of the Class 1 Claim that must be paid off to satisfy the Class 1 Secured Claim in full: (1) if paid in full within 12 months of the Effective Date, the Lender shall waive 100% of the Maturity Interest; (2) if paid in full between the 13th and 18th month following the Effective Date, the Lender shall waive 75% of the Maturity Interest; (3) if paid in full between the 19th and 24th month following the Effective Date, the Lender shall waive 50% of the Maturity Interest; (4) if paid in full between the 25th and 36th month following the Effective Date, the Lender shall waive 25% of the Maturity Interest. If the Secured Claim is not paid in full before the end of the 36th month following the Effective Date, the Reorganized Debtors shall be required to pay the full amount of the Secured Claim including without limitation, the Maturity Interest.

   (b) Option Two: (i) The Reorganized Debtors shall pay the Lender, on the Effective Date, a sum in the amount of $100,000.00 (the "Loan Modification

Fee"); (ii) the maturity date on the note securing the Class 1 Claim shall be extended to a date that is two (2) years after the Effective Date (the "Option Two Maturity Date"); (iii) interest shall accrue upon the Principal at the rate of five percent (5%) per annum, so long as the Reorganized Debtors remain current on their obligations under the loan documents after the Effective Date; (iv) in the event that the Reorganized Debtors pay off the balance of the Class 1 Claim in full prior to the Option Two Maturity Date, the Lender shall waive the following sliding scale percentages of the Maturity Interest, thereby reducing the amount of the Class 1 Claim that must be paid off to satisfy the Class 1 Secured Claim in full: (1) if paid in full within 6 months of the Effective Date, the Lender shall waive 100% of the Maturity Interest; (2) if paid in full between the 6th and 12th month following the Effective Date, the Lender shall waive 60% of the Maturity Interest; (3) if paid in full between the 13th and 18th month following the Effective Date, the Lender shall waive 30% of the Maturity Interest. If the Secured Claim is not paid in full before the end of the 18th month following the Effective Date, the Reorganized Debtors shall be required to pay the full amount of the Secured Claim including without limitation, the Maturity Interest.

## CLASS 2: ADMINISTRATIVE CONVENIENCE CLASS

The Class 2 Administrative Convenience Claims consist of all Allowed Unsecured Claims of $1,000 or less, as well as all Class 3 Allowed General Unsecured Claims in excess of $1,000 whose holders elect to reduce their claims to $1,000 to be treated as a Class 2 Administrative Convenience Claimant. Allowed Class 2 Administrative Convenience Claims shall be paid, at their option, as follows:

Option 1: 80% of their Allowed Claims in cash within thirty (30) days of the Effective Date of the Plan; or
Option 2: 100% of their Allowed Claims to be paid on or before the six (6) month anniversary of the Effective Date.

To the extent Class 2 Administrative Convenience Claims do not vote, or do not elect either Option 1 or Option 2, any Creditor holding a Class 2 Administrative Convenience Claim shall be deemed to elect Option 1.

## CLASS 3: GENERAL UNSECURED CLAIMS

Class 3 Allowed General Unsecured Claims consist of all other Allowed Claims against the Villas Debtor not placed in any other Class. Creditors holding Allowed Class 3 General Unsecured Claims shall be paid 100% of their Allowed Claim out of Net Cash Flow, with payments being made on a quarterly basis on October 1, January 1, April 1 and July 1 of each year following the Effective Date. Such payments will be distributed on a Pro Rata basis from Net Cash Flow. Payment to the Class 3 Claims will be made upon the satisfaction of the Administrative Claims for professional fees approved pursuant 11 U.S.C. § 330, and Priority Tax Claims.

<u>CLASS 4: EQUITY INTEREST HOLDERS</u>

Class 4 Equity Interest Holders shall retain their interests in the Villas Debtor in exchange for funding administrative expense claims accrued during this case, including, without limitation, the Villas Debtor's attorneys' fees. In addition, to the extent any funds are needed to satisfy any payments on Administrative Claim, payment to Class 2 Administrative Convenience Claim that elects Option 1, or any other payments due on or within thirty (30) days of the Effective Date (the "Confirmation Funds"), Class 4 Equity Interest Holders will be required to remit their proportional share of the Confirmation Funds to retain their Class 4 Equity Interests or be diluted to allow the Class 4 Equity Interest Holders who contribute the Confirmation Funds needed.

## 2. **OAK GATE DEBTOR**

<u>CLASS 1: SECURED CLAIM OF LENDER</u>

The Class 1 Claim of Lender shall be treated as a first priority, fully perfected, and unavoidable Secured Claim, secured by all of the assets of the Reorganized Debtors. The Secured Claim shall consist of the following amounts: (i) principal in the amount of $21,657,145.00, <u>less</u> any amounts paid by either of the Debtors to the Lender after the Petition Date through the Effective Date ("<u>Principal</u>"); (ii) Additional Interest in the amount of $433,000.00 (the "<u>Additional Interest</u>"); (iii) Deferred Interest in the amount of $584,376.10 (the "<u>Deferred Interest</u>") (the "Additional Interest" and the "Deferred Interest" are collectively referred to herein as the "<u>Maturity Interest</u>"); and (iv) and pre-petition Default Interest in the amount of $195,739.73. Further, it shall not be an Event of Default (as defined in the Loan Documents) for the Reorganized Debtors to effectuate a "roll-up" of their entities into a single special purpose entity. The Lender's Claim shall be treated in one of the following ways, at the option of the Lender (to the extent neither option is elected by the deadline to submit ballots, the Lender shall be deemed to have chosen Option One):

    (a)    <u>Option One</u>: (i) The Reorganized Debtors shall pay the Lender, on the Effective Date, a sum in the amount of $200,000.00 (the "<u>Loan Modification Fee</u>"); (ii) the maturity date on the note securing the Class 1 Claim shall be extended to a date that is four (4) years after the Effective Date (the "<u>Option One Maturity Date</u>"); (iii) interest shall accrue on the Principal at the non-default rate of interest contained in the Loan Documents, so long as the Reorganized Debtors remain current on their obligations under the loan documents after the Effective Date; (iv) in the event that the Reorganized Debtors pay off the balance of the Class 1 Claim in full prior to the Option One Maturity Date, the Lender shall waive the following sliding scale percentages of the Maturity Interest, thereby reducing the amount of the Class 1 Claim that must be paid off to satisfy the Class 1 Secured Claim in full: (1) if paid in full within 12 months of the Effective Date, the Lender shall waive 100% of the Maturity Interest; (2) if paid in full between the 13th and 18th month following the Effective Date, the Lender shall waive 75% of the Maturity

Interest; (3) if paid in full between the 19th and 24th month following the Effective Date, the Lender shall waive 50% of the Maturity Interest; (4) if paid in full between the 25th and 36th month following the Effective Date, the Lender shall waive 25% of the Maturity Interest. If the Secured Claim is not paid in full before the end of the 36th month following the Effective Date, the Reorganized Debtors shall be required to pay the full amount of the Secured Claim including without limitation, the Maturity Interest.

(b)     Option Two: (i) The Reorganized Debtors shall pay the Lender, on the Effective Date, a sum in the amount of $100,000.00 (the "Loan Modification Fee"); (ii) the maturity date on the note securing the Class 1 Claim shall be extended to a date that is two (2) years after the Effective Date (the "Option Two Maturity Date"); (iii) interest shall accrue upon the Principal at the rate of five percent (5%) per annum, so long as the Reorganized Debtors remain current on their obligations under the loan documents after the Effective Date; (iv) in the event that the Reorganized Debtors pay off the balance of the Class 1 Claim in full prior to the Option Two Maturity Date, the Lender shall waive the following sliding scale percentages of the Maturity Interest, thereby reducing the amount of the Class 1 Claim that must be paid off to satisfy the Class 1 Secured Claim in full: (1) if paid in full within 6 months of the Effective Date, the Lender shall waive 100% of the Maturity Interest; (2) if paid in full between the 6th and 12th month following the Effective Date, the Lender shall waive 60% of the Maturity Interest; (3) if paid in full between the 13th and 18th month following the Effective Date, the Lender shall waive 30% of the Maturity Interest. If the Secured Claim is not paid in full before the end of the 18th month following the Effective Date, the Reorganized Debtors shall be required to pay the full amount of the Secured Claim including without limitation, the Maturity Interest.

## CLASS 2: ADMINISTRATIVE CONVENIENCE CLASS

The Class 2 Administrative Convenience Claims consist of all Allowed Unsecured Claims of $1,000 or less, as well as all Class 3 Allowed General Unsecured Claims in excess of $1,000 whose holders elect to reduce their claims to $1,000 to be treated as a Class 2 Administrative Convenience Claimant. Allowed Class 2 Administrative Convenience Claims shall be paid, at their option, as follows:

Option 1:     80% of their Allowed Claims in cash within thirty (30) days of the Effective Date of the Plan; or
Option 2:     100% of their Allowed Claims to be paid on or before the six (6) month anniversary of the Effective Date.

To the extent Class 2 Administrative Convenience Claims do not vote, or do not elect either Option 1 or Option 2, any Creditor holding a Class 2 Administrative Convenience Claim shall be deemed to elect Option 1.

<u>CLASS 3: GENERAL UNSECURED CLAIMS</u>

Class 3 Allowed General Unsecured Claims consist of all other Allowed Claims against the Oak Gate Debtor not placed in any other Class. Creditors holding Allowed Class 3 General Unsecured Claims shall be paid 100% of their Allowed Claim out of Net Cash Flow, with payments being made on a quarterly basis on October 1, January 1, April 1 and July 1 of each year following the Effective Date. Such payments will be distributed on a Pro Rata basis from Net Cash Flow. Payment to the Class 3 Claims will be made upon the satisfaction of the Administrative Claims for professional fees approved pursuant 11 U.S.C. § 330, and Priority Tax Claims.

<u>CLASS 4: EQUITY INTEREST HOLDERS</u>

Class 4 Equity Interest Holders shall retain their interests in the Oak Gate Debtor in exchange for funding administrative expense claims accrued during this case, including, without limitation, the Oak Gate Debtor's attorneys' fees. In addition, to the extent any funds are needed to satisfy any payments on Administrative Claim, payment to Class 2 Administrative Convenience Claim that elects Option 1, or any other payments due on or within thirty (30) days of the Effective Date (the "Confirmation Funds"), Class 4 Equity Interest Holders will be required to remit their proportional share of the Confirmation Funds to retain their Class 4 Equity Interests or be diluted to allow the Class 4 Equity Interest Holders who contribute the Confirmation Funds needed.

**C.    IMPLEMENTATION OF THE PLAN**

The Debtors shall operate their businesses following the Effective Date, and shall dedicate sufficient revenues to fund all obligations contained herein. The Debtors' Financial Projections, supporting such projected revenues and expenditures, are attached hereto as **Exhibit 4**, and incorporated by reference herein. The Debtors' projections assume normal operations over the five years following the Effective Date. The Debtors' operations will enable them to generate sufficient revenues to fund the Plan. Operating expense and capital expenditure numbers have been generated using Debtors' expertise gained from operating their business. These Financial Projections have been formulated using a cash based accounting method.

<u>Reorganized Debtors</u>. Upon the Confirmation Date of the Plan, each of the Reorganized Debtors shall be the survivor of the respective Debtor.

<u>Cramdown</u>. If any impaired class votes to accept the plan, but not all classes accept the plan, the Debtors will seek confirmation under the cram down provision of section 1129(b) of the Bankruptcy Code.

**D.    DISPOSITION OF CAUSES OF ACTION**

The Debtors have not yet concluded their analysis of existing Claims and Causes of Action and expressly reserves the right to continue such analysis. All Claims and Causes of Action owned by the Debtors, Causes of Action that could have been brought by a Creditor on

behalf of the Debtors, and all Causes of Action created by the Bankruptcy Code not expressly waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval.

## E.  EXECUTORY CONTRACTS AND LEASES

General Assumption and Assignment. The Debtors anticipate, but do not guarantee, that all unexpired executory contracts will be assumed at Confirmation. All assumed contracts will be paid in the ordinary course of business on a going forward basis after Confirmation. All executory contracts and unexpired leases of the Debtors (including, but not limited to, those listed on the Debtors' Schedules) which are not expressly rejected on or before ninety (90) days after the Confirmation Date or not otherwise specifically treated in the Plan or in the Confirmation Order shall be deemed to have been assumed by the applicable Debtor on the Confirmation Date. The Debtors reserve the right to file an exhibit with the Bankruptcy Court prior to the Confirmation Date rejecting any executory contract or lease.

Cure of Assumed Executory Contracts and Unexpired Leases. To the extent necessary, the applicable Debtor shall cure all defaults existing under any assumed executory contract or unexpired lease by paying the amount, if any, claimed by any party to such executory contract or unexpired lease as set forth in a proof of claim, which shall be filed with the Bankruptcy Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the applicable Debtor may pay such amount as may be agreed upon between such Debtor and any party to such executory contract or unexpired lease, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. The Debtors believe that no such cure claims will exist.

The Debtors shall have the right to file within sixty (60) days of the filing of an Assumption Cure Proof of Claim an objection in writing to the amount set forth in the Assumption Cure Proof of Claim and the Bankruptcy Court shall determine the amount actually due and owing in respect of the defaults.

Payment of such Claims shall be made by the applicable Reorganized Debtor on the later of: (i) ten (10) Business Days after the expiration of the sixty (60) day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

## F.  RESOLUTION OF DISPUTED CLAIMS

Only Allowed Claims will be paid by Debtors according to the Plan. An Allowed Claim is any claim against a Debtor for which a proof of claim was timely and properly filed or is deemed to have been timely and properly filed because the Debtor has or hereafter does list such claim on its schedules as liquidated and not disputed or contingent.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtors may file with the Court objections to Claims and Interests.

If a Reorganized Debtor files an objection to a proof of claim ("Undetermined Claim"), then an Allowed Claim shall be the amount of the claim allowed by order of the Bankruptcy Court. Thereafter, only upon entry of an order determining the amount of the Allowed Claim and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan. Such distributions shall be made in the manner provided for by the Plan and the terms of any Final Order of the Court with respect to such Allowed Claim. In the event that a Debtor makes any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held by a Debtor and/or a Reorganized Debtor with respect to such claim.

## ARTICLE IV - CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

Conditions to Confirmation. Confirmation of the Plan cannot occur unless each of the following conditions precedent has occurred:

1. the Bankruptcy Court shall have approved the Disclosure Statement; and
2. the Confirmation Order is entered by the Bankruptcy Court.

## ARTICLE V - MODIFICATION OF THE PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtors to amend or modify a plan at any time prior to confirmation. Post-confirmation modifications of a plan are allowed under section 1127(b), if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification. The Debtors reserve the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event the Debtors propose to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity interest holder who has previously accepted the Plan. If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, the Debtors intend to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

# ARTICLE VI - CONSIDERATIONS IN VOTING ON THE PLAN

## A.  ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist in the formation of a judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful.  The Debtors believe the proposed Plan to be in the best interests of creditors and the Debtors, and does not favor any alternative to the proposed Plan. In arriving at that conclusion, the Debtors assess the alternatives as follows:

Chapter 7 Liquidation Analysis.  The Debtors could convert the cases to Chapter 7 and allow a bankruptcy trustee to be appointed to liquidate and distribute assets.  In the event that the Court does not confirm a plan of reorganization in this case, conversion to Chapter 7 will ultimately result.  The Debtors believe this alternative to be unsatisfactory for the reasons stated in Article VII. B., below. In addition, Unsecured Creditors would receive no funds in the event that the Debtors' assets are liquidated under Chapter 7 of the Bankruptcy Code.

Dismissal of the Case.  Dismissal of the Chapter 11 Cases would most likely lead to the same unsatisfactory result as Chapter 7 liquidation.

Sale of Property of the Estate under Section 363.  Section 363 of the Bankruptcy Code permits a debtor to sell property of the estate with approval of the Bankruptcy Court.  The Debtors believe that this alternative would not maximize values of the Debtors' property.  A sale under section 363 in the time frame required for the Debtors to conclude their Chapter 11 Cases typically does not result in optimal values for property.  In addition, it requires specific expertise to operate the Debtors' business, and without such specialized qualifications, the Debtors' business cannot operate as a going concern.  The Debtors believe that a quick section 363 sale of the Debtors' assets would lead to results for creditors far inferior to the Plan.

The Debtors have attempted to set forth alternatives to the proposed Plan.  However, the Debtors must caution creditors that a vote must be for or against the Plan.  The vote on the Plan does not include a vote on alternatives to the Plan.  There is no assurance what turn the proceedings will take if the Plan fails to be accepted.  If you believe one of the alternatives referred to is preferable to the Plan and you wish to urge it upon the Court, you should consult counsel.

## B.  LIQUIDATION ANALYSIS

The likely result of a conversion of this case to Chapter 7 liquidation would be a lifting of the automatic stay of 11 U.S.C. § 362(a) to permit foreclosure by Lender.  There is no mechanism under Texas law to require a foreclosing lender to bid more than the amount of the indebtedness secured by the property.  In the event of a liquidation of the Debtors' assets in a Chapter 7 bankruptcy case, Lender would foreclose upon all such assets. This would most likely leave a substantial deficiency due to the Lender's legal ability to bid less than reasonably

equivalent value. The Debtors would be stripped of their assets and the ability to generate operating revenue. Distribution to any class other than Lender would likely be zero in a liquidation scenario.

## C. SPECIFIC CONSIDERATIONS IN VOTING

All of the foregoing give rise in the instant case to the following implications and risks concerning the Plan.

The Plan assumes the continued operation of the Mira Vista Ranch by the Debtors, and assumes that the rental rates and occupancy levels of the Mira Vista Ranch remain stable. Further, the Financial Projections also assume no greater rate of default or damage as has historically been experienced at the Mira Vista Ranch. Statistically significant changes in any such behaviors of the tenant population in Lewisville, Texas could adversely impact the Debtors' ability to make the payments projected in the Plan.

While the Plan provides for certain payments at confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is allowed. A Claim will be allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Court at a regular, evidentiary hearing and allowed in full or in part or disallowed. While the Debtors bear the principal responsibility for Claim objections, any interested party, including creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled.

## D. DISCLOSURES REQUIRED BY THE BANKRUPTCY CODE

The Bankruptcy Code requires disclosure of certain facts:

1) There are no payments made or promises of the kind specified in section 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Court.

2) Counsel to the Debtors has advised the Debtors that the Debtors will require legal services in connection with this case after confirmation which will require reimbursement. The Debtors may continue to use Coffin & Driver, PLLC, as counsel after confirmation.

## E. DESCRIPTION OF MANAGEMENT AND CONTROL PERSONS OF DEBTORS

There will be no changes to the management and control persons of the Debtors, as of the date of filing of the Plan.

## ARTICLE VII - PROVISIONS GOVERNING DISTRIBUTION

<u>Claims</u>. Claims are defined in the Plan. The Plan is intended to deal with all claims

against the Debtors' estates of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to section 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to section 502(a) of the Bankruptcy Code will be entitled to and receive payment under the Plan.

Compliance with Plan. Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

Provisions Covering Distributions. All payments required by the Plan shall be made by Reorganized Debtors, their successors, assigns or designees. Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment to be at the sole discretion of the Reorganized Debtors.

Distributions and deliveries to Holders of an Allowed Claim shall be made to the Holder at the address set forth on the latest-filed proof of claim filed by such Holder or at the address listed on Debtors' Schedules of such Holder if no proof of claim is filed. If any Holder's distribution is returned as undeliverable, the Reorganized Debtors shall hold the distribution until notified of such Holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of the Reorganized Debtors and the Claim shall be discharged and forever barred.

Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance shall be made directly to the Reorganized Debtors at the Notice Address(es) listed herein in Article XI by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of such checks shall be discharged and forever barred.

## ARTICLE VIII - RETENTION OF JURISDICTION

Purposes. Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction in the following matters after confirmation of the Plan:

i.      to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

ii.     to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or the Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any of the Debtors are a party or with respect to which such Debtor may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if

need be, to liquidate any and all claims arising therefrom;

iv.     to hear and determine any and all actions initiated by the Debtors and/or any of the Reorganized Debtors, whether by motion, complaint or otherwise;

v.     to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.     to modify the Plan, the Disclosure Statement or any document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, the Plan, the Disclosure Statement or any document created in connection with the Plan, in such manner as may be necessary to carry out the purposes and effects of the Plan to the extent authorized by the Bankruptcy Code;

vii.     to ensure that the distribution is accomplished in accordance with the provisions of the Plan;

viii.     to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix.     to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of the Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x.     to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.     to determine such other matters as may arise in connection with the Plan, this Disclosure Statement or the Confirmation Order;

xiii.     to enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Cases;

xiv.     to determine all issues relating to the Claims of any taxing authorities, state or federal;

xv.     to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi.     to enter a Final Order and final decree closing the Chapter 11 Cases.

Exclusive Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of the Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

Abstention. If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Cases, including the matters set forth in this Article X, Article X of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to

such matter.

Closing of Case. The Reorganized Debtors shall file an application for final decree and to close the Bankruptcy Cases and promptly set a hearing no later than twelve (12) months after the Effective Date, or show cause to the Bankruptcy Court within such period why the Bankruptcy Court should not enter a final decree. Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Bankruptcy Case, and jurisdiction shall be retained over such proceeding.

## ARTICLE IX - MISCELLANEOUS PROVISIONS

Certain Rights Unaffected. Except as otherwise provided in the Plan, any rights or obligations which the Debtors' creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

Binding Effect. As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the holders of the Claims, and their respective successors and assigns.

Discharge of Claims. Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors or any of their assets or properties to the extent permitted by section 1141 of the Bankruptcy Code. Upon the Effective Date, all existing Claims against the Debtors shall be deemed to be discharged and all holders of Claims shall be precluded from asserting against the Debtors' assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder filed a proof of claim.

Discharge of the Debtors. Any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of their assets or properties. Upon the Effective Date, the Debtors shall be deemed discharged and released to the extent permitted by section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all of the Debtors' liabilities. Pursuant to section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against the Debtors or the property of any of the Debtors, to the extent it relates to a claim discharged.

Exculpations. The Debtors' professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the

confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

Injunctive Relief. Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Debtors' assets or properties in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER THE GUARANTORS, INSIDERS, OFFICERS, DIRECTORS, EMPLOYEES NOR THE INTEREST HOLDERS OF THE DEBTORS SHALL BE DISCHARGED AND RELEASED FROM LIABILITY, IF ANY, FOR CLAIMS AND DEBTS ARISING UNDER OR IN CONNECTION WITH THE DEBTORS OR THESE CHAPTER 11 CASES AND/OR OTHERWISE ADDRESSED AND/OR TREATED IN THIS PLAN, HOWEVER, ABSENT FURTHER COURT ORDER UPON NOTICE AND HEARING, THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT ADDRESSED IN THIS PLAN, SO LONG AS THE PLAN IS NOT IN DEFAULT, SHALL BE THE PLAN AND ALL PARTIES CLASSIFIED IN AND UNDER ARTICLES 4 AND 5 HEREIN ARE ENJOINED FROM TAKING ANY ACTION INCONSISTENT HEREWITH, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST ANY GUARANTOR, INSIDERS, OFFICER, DIRECTOR, EMPLOYEE OR INTEREST HOLDER. TO THE EXTENT NECESSARY, ANY APPLICABLE STATUTE OF LIMITATIONS AGAINST COLLECTION FROM ANY THIRD PARTY IS SPECIFICALLY TOLLED FROM THE PERIOD OF TIME FROM THE PETITION DATE UNTIL THE DATE UPON WHICH THE DEBTORS FAIL TO CURE ANY WRITTEN NOTICE OF DEFAULT AS SET FORTH IN THE PLAN AND/OR IN ANY APPLICABLE LOAN DOCUMENTS.**

Notices. All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**Debtors:**

Mira Vista Villas, LLC and
Mira Vista Oak Gate, LLC
c/o Katherine Goodwin
P.O. Box 260397
Plano, TX 75023-0397

and

**Debtors' Counsel:**

Vickie L. Driver
Coffin & Driver, PLLC
7557 Rambler Rd.
Suite 110
Dallas, Texas 75231
Tel: 214.377.4848
Fax: 214.377.4858

All notices and request to Holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the address listed in Debtors' Schedules.

## ARTICLE X - CONCLUSION

The Debtors respectfully submit that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan. The Debtors believe that the Plan "is fair and equitable" and "does not discriminate unfairly." Additionally, the Debtors believe that the Plan has been proposed in good faith.

The Debtors respectfully request that this Disclosure Statement be approved for circulation to the Debtors' creditors and that it be permitted to solicit votes for acceptance of the Plan.

**Mira Vista Villas, L.L.C.**

By: _____
Katherine Goodwin,
Vice President of Villas of Plano,
GP, L.L.C., General Partner of Villas
of Plano, L.P.

**Mira Vista Oak Gate, L.L.C.**

By: _____
Katherine Goodwin
Vice President of MUM, L.L.C.,
General Partner of Oak Gate
Apartments, Ltd.

Submitted by:

By: /s/ Vickie L. Driver
Vickie L. Driver
State Bar No. 24026886
**Coffin & Driver, PLLC**
7557 Rambler Road
Suite 110
Dallas, Texas 75231
Telephone: 214.377.4848
Facsimile: 214.377.4858
Email: vdriver@coffindriverlaw.com

**COUNSEL FOR DEBTORS**