| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **MIRA VISTA VILLAS, L.L.C.,** | § | **CASE NO. 10-42223 -11** |
| | § | |
| Debtor, | § | |
| | § | |
| | § | |
| | § | |
| **MIRA VISTA OAK GATE, L.L.C.,** | § | **CASE NO. 10-42224-11** |
| | § | |
| Debtor. | § | **Jointly administered under** |
| | § | **CASE NO. 10-42223-11** |

## DEBTORS' REVISED AND MODIFIED FIRST AMENDED JOINT PLAN OF REORGANIZATION

Mira Vista Villas, L.L.C. ("Vista") and Mira Vista Oak Gate, L.L.C. ("Oaks") (collectively, the "Debtors"), debtors and debtors-in-possession, hereby propose the following Revised and Modified First Amended Joint Plan of Reorganization (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

1.1  Overview of the Plan. The Plan provides for a reorganization of all liabilities owed by the Debtors, as described herein. Each of the Reorganized Debtors, as provided herein, shall survive each of the respective Debtors.

1.2  Payments to Creditors. The Plan provides for each of the Debtors' Creditors to be paid as provided in Article V herein from revenues associated with the operations of the Reorganized Debtors' businesses. All Creditors of the Debtors shall be paid as provided herein in accordance with the priority scheme established by the Code.

## ARTICLE II
## DEFINITIONS

As used in this Plan, the following terms shall have their respective meanings set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1  Administrative Claim:  Any claim for payment of any cost or expense of

administration of the Chapter 11 Bankruptcy Proceedings entitled to priority in accordance with sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtors' Estates and operating their businesses from and after the Petition Date to and including the Confirmation Date (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Distribution Date) and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against any of the Debtors' Estates under Chapter 11 of Title 28, United States Code.

2.2     Allowed Claim or Allowed Interest:  Any Claim (a) based on an application of a Professional Person to the extent such application is approved by final Order; (b) allowed under this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by one of the Debtors in its schedules filed under section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

2.3     Allowed Priority Claim:  All or that portion of any Priority Claim that is or has become an Allowed Claim.

2.4     Bankruptcy Code:  The Bankruptcy Reform Act of 1978 as amended, and as applicable to the Chapter 11 case, sections 101 et seq. Title 11, United States Code.

2.5     Bankruptcy Rules:  The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

2.6     Business Day:  Any day on which banks are open to carry on their ordinary commercial banking business in Dallas, Texas.

2.7     Cash:   Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.8     Causes of Action:  All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtors, for affirmative recovery of Cash or other property of the Estates, other than accounts receivable (whether such Causes of Action are the subject of presently pending lawsuits, adversary proceedings or appeals or otherwise) existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.9     Chapter 11 Cases:  The Chapter 11 cases of Mira Vista Villas, L.L.C. (Case No. 10-42223) and Mira Vista Oak Gate, L.L.C.(Case No. 10-42224), jointly administered under Case No. 10-42223.

2.10    Claim:  Any right against the Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.11    Collateral:  Property in which the Debtors have an interest that secures, in whole or in part, payment of an Allowed Claim.

2.12    Confirmation:  Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.13    Confirmation Date:  The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

2.14    Confirmation Hearing:  The date set by the Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.15    Confirmation Order:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.16    Court:  The United States Bankruptcy Court for the Eastern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Case.

2.17    Creditor:  Any entity that is the holder of a claim or an interest, including but not limited to: (a) a claim that arose on or before the Petition Date, (b) an interest that arose on or before the Record Date, (c) a claim against one of the Debtors' Estates of any kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.18    Debtors: Mira Vista Villas, L.L.C. and Mira Vista Oak Gate, L.L.C.

2.19    Disclosure Statement:  The written Disclosure Statement in respect to this Plan approved by the Court pursuant to section 1125 of the Bankruptcy Code.

2.20    Disputed Claim:  Any claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.21 <u>Effective Date</u>: The Effective Date is defined below in Article V. Upon the occurrence of the Effective Date, the Reorganized Debtors shall cause to be filed of record a notice of occurrence of Effective Date.

2.22 <u>Equity Interest Holders</u>: All entities or individuals that have an interest in the Debtors.

2.23 <u>Estates</u>: The Estates created in the Chapter 11 Cases for the Debtors by section 541 of the Bankruptcy Code.

2.24 <u>Fee Application</u>: An application of a Professional Person under sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 cases.

2.25 <u>Final Distribution</u>: Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.26 <u>Final Order</u>: An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.27 <u>Holder or Claimholder</u>: Any entity that is the holder of a claim, including but not limited to (a) a claim that arose on or before the Petition Date, (b) a claim against any of the Debtors' Estates of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.28 <u>Impaired</u>: When used with respect to any claim, interest or class, it has the same meaning as that contained in section 1124 of the Bankruptcy Code.

2.29 <u>Lender</u>: CF CB Lender, LLC; Debtors' pre-petition lender and successor-in-interest to Wrightwood Capital Lender, LP.

2.30 <u>Net Cash Flow</u>: The consolidated cash flow of the Debtors, calculated on a monthly basis, remaining after payment and/or accrual of any of the Debtors' operating expenses, which shall include debt service, any escrow payments due under the Loan Documents and capital expenditures, incurred in the ordinary course of their business and accrual of necessary reserves.

2.31 <u>Oak Gate Debtor</u>: Mira Vista Oak Gate, L.L.C.

2.32 <u>Order</u>: An order or judgment of the Bankruptcy Court as entered on the docket.

2.33 <u>Petition Date</u>: July 5, 2010.

2.34 <u>Priority Claims</u>: Allowed Claim entitled to a priority under, *inter alia*, section 507(a) of the Bankruptcy Code.

2.35 <u>Priority Wage Claims</u>: Allowed Claims entitled to a priority under section 507(a)(4) Bankruptcy Code.

2.36 <u>Pro Rata</u>: Proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Allowed Interest to the amount of the Allowed Claim or Allowed Interest is the same as the ratio of the amount of consideration distributed on account of All Allowed Claims and Allowed Interests of the class in which the particular Allowed Claim or Allowed Interest is included in the amount of All Allowed Claims and Allowed Interests of that Class.

2.37 <u>Professional Person</u>: Any entity retained or to be compensated pursuant to sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.38 <u>Property or Mira Vista Ranch</u>: A 304 unit apartment community located at 350 Continental Drive, Lewisville, Texas 75067 owned as tenants-in-common by Debtors known as Mira Vista Ranch.

2.39 <u>Reorganized Mira Vista Villas Debtor</u>: The legal entity that shall survive Mira Vista Villas, LLC as of the Confirmation Date.

2.40 <u>Reorganized Mira Vista Oak Gate Debtor</u>: The legal entity that shall survive Mira Vista Oak Gate, LLC as of the Confirmation Date.

2.41 <u>Reorganized Debtors</u>: Collectively, the legal entities that shall survive the Debtors as of the Confirmation Date.

2.42 <u>Plan</u>: The Plan proposed by the Debtors, either in its present form or as it may be amended or modified.

2.43 <u>Secured Claim</u>: A claim of a creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b)subject to set off under §553 of the Bankruptcy Code, in each case to the extent of the value of said creditor's interest in the Debtors' interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a secured creditor from making the election provided in §1111(b) (2)of the Bankruptcy Code.

2.44 <u>Secured Creditor</u>: Any Creditor that is the holder of a Secured Claim.

2.45 <u>Tax Claim</u>: Any claim that is entitled to priority in payment under § 507(a)(8)of the Bankruptcy Code.

2.46 <u>Undetermined Claim</u>: A claim that is (a) a Disputed Claim; (b) a claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined administrative claim in respect of an application of a professional person; or (d) a claim that is unliquidated or contingent.

2.47 <u>Unsecured Claim</u>: Any claim against the Debtors whatsoever, other than (1) a Secured Claim, or (2) a Claim that is not entitled to priority pursuant to the Bankruptcy Code.

2.48 <u>Villas Debtor</u>: Mira Vista Villas, L.L.C.

# ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS

3.1 <u>Designation of Classes of Claims</u>: The following is a designation of the Classes of Claims under this Plan of each Debtor. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

### Claims Against Villas Debtor

Allowed Administrative Claims (Unclassified).

Allowed Tax Priority Claims (Unclassified).

Class 1: Secured Claims of Lender (impaired).

Class 2: Administrative Convenience Class (impaired).

Class 3: General Unsecured Claims (impaired).

Class 4: Equity Interests (unimpaired).

### Claims Against Oak Gate Debtor

Allowed Administrative Claims (Unclassified).

Allowed Tax Priority Claims (Unclassified).

Class 1: Secured Claims of Lender (impaired).

Class 2: Administrative Convenience Class (impaired).

Class 3: General Unsecured Claims (impaired).

Class 4:  Equity Interests (unimpaired).


# ARTICLE IV
## PAYMENT OF UNCLASSIFIED ADMINISTRATIVE CLAIMS
## AND EXPENSES AND CERTAIN PRIORITY CLAIMS

**A.**   **Villas Debtor.**

4.1   Administrative Claims: - Except to the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims against the Villas Debtor prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan by the Villas Debtor or the Reorganized Villas Debtor, as applicable. Administrative Claims which become Allowed Claims against the Villas Debtor after the Effective Date of the Plan shall be paid in full in cash by the Reorganized Villas Debtor on or before ten (10) Business Days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.  Administrative Claims against the Villas Debtor for professional fees approved pursuant to 11 U.S.C. § 330 shall be paid by the Reorganized Villas Debtor upon the entry of an order allowing such claim.  For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim.

4.2   Priority Tax Claims: - Any Priority Tax Claims of the Villas Debtor shall be paid by the Reorganized Villas Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on January 1, April 1, July 1, and October 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in section 1129(a)(9)(C) of the Bankruptcy Code. The Villas Debtor believes there will be no such claims.

**B.**   **Oak Gate Debtor.**

4.3   Administrative Claims: - Except to the extent that the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims which are Allowed Claims against the Oak Gate Debtor prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan by the Oak Gate Debtor or the Reorganized Oak Gate Debtor, as applicable.  Administrative Claims which become Allowed Claims against the Oak Gate Debtor after the Effective Date of the Plan shall be paid in full in cash by the Reorganized Oak Gate Debtor on or before ten (10) Business Days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.  Administrative Claims against the Oak Gate Debtor for professional fees approved pursuant to 11 U.S.C. § 330 shall be paid by the Reorganized Oak Gate Debtor upon the entry of an order allowing such claim.  For purposes of payment of Administrative Claims, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty

(30) days after the entry of an Order confirming the Plan or such Claimant shall be barred from asserting an Administrative Claim.

    4.4    <u>Priority Tax Claims</u>: - Any Priority Tax Claims of the Oak Gate Debtor shall be paid by the Reorganized Oak Gate Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 4.5% per annum accrued thereon on a quarterly basis on January 1, April 1, July 1, and October 1 of each year over a period not exceeding six (6) years after the date of assessment of the Claims, as provided in section 1129(a)(9)(C) of the Bankruptcy Code. The Oak Gate Debtor believes there will be no such claims.

**ARTICLE V**
**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

**A.**    **Villas Debtor.**

    5.1    <u>Secured Claim of Lender</u>: (Class 1) –The Class 1 Claim of Lender shall be treated as a first priority, fully perfected, and unavoidable Allowed Secured Claim, secured by a first lien in Mira Vista Ranch and all of the other assets of the Reorganized Debtors. The Class 1 Claim shall be in the following amount: $22,523,910, plus $7,145 in pre-petition loan workout fees, minus $111,303.00 in post-petition adequate protection payments, for a total of $22,419,752 which is not subject to offset or counter-claim. The Class 1 Claim shall be paid by the Reorganized Debtors treated as follows:

    (a)    <u>Original Loan Documents.</u>

    (i)    On or about November 30, 2007, Debtors and Wrightwood Capital Lender LP ("<u>Wrightwood</u>") entered into a *Loan and Security Agreement* (the "<u>Loan Agreement</u>") in connection with a loan from Wrightwood to Debtors in the original principal amount of $21,650,000.00 (the "<u>Loan</u>").

    (ii)    On or about November 30, 2007, Debtors executed that certain *Promissory Note* (the "<u>Note</u>") to evidence its indebtedness under the Loan. The Note is dated November 30, 2007 and in the original principal amount of $21,650,000.00.

    (iii)    To secure full repayment of the Note, Debtors executed that certain *Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing* (the "<u>Deed of Trust</u>") dated November 30, 2007.

    (iv)    In December of 2007, Wrightwood assigned and transferred to Lender, among other things, the Note and the Deed of Trust, and all rights, remedies and interests thereunder to Lender. As evidence of this assignment, Wrightwood filed that certain *Assignment of Deed of Trust with Assignment of Leases and Rents, Security Agreement, Fixture Filing and Other Loan Documents* (the "<u>Assignment</u>").

        (v)     The Loan Agreement, Note, Deed of Trust, Assignment are collectively referred to herein as the "Loan Documents."

(b)    Loan Modification Fee.    The Reorganized Debtors shall pay the Lender, on the Effective Date, a sum in the amount of $100,000.00 (the "Loan Modification Fee").

(c)    Maturity Date.  The maturity date of the Note shall be extended to twelve (12) months following the later of (i) February 18, 2011 or (ii) five (5) business days after counsel for the Debtors receives drafts of all documents the Lender deems necessary to modify the Loan Documents (the "Transaction Date"); provided, however, that if the Debtors submit signed commitments for financing and equity sufficient to pay the debt owed to the Lender in full no later than thirty (30) days prior to the Maturity Date, the Debtors shall be entitled to a one time right to extend the Maturity Date for a time sufficient to close the commitments not to exceed 30 days from the Maturity Date (the "Maturity Date").

(d)    Interest Rate; Interest Payment Rate.

        (i)     During the period that the Principal remains outstanding, interest shall accrue upon the Principal at the rate of:

                (1)   eight percent (8%) per annum from the Transaction Date through October 18, 2011; and

                (2)   nine percent (9%) per annum from October 19, 2011 through the Maturity Date (collectively, the "Interest Rate").

        (ii)   During the period that the Principal remains outstanding, the Reorganized Debtors shall pay to the Lender on the first (1st) day of each calendar month, interest on the Principal at the rate of six percent (6%) per annum (the "Monthly Payment"), beginning on the Transaction Date, for any per diem interest accrued for the remainder of the month of the Transaction Date, and for every month thereafter, on the month following the month in which such interest accrues.

        (iii)   The grace period for the Monthly Payment due date shall be amended to be ten (10) days after the due date described in subsection (ii) above.

        (iv)   Any accrued interest above such Monthly Payment (the "Accumulated Interest") shall be due and payable upon the earlier of the (i) pay-off or (ii) Maturity Date.

        (v)    All interest shall be computed on the basis of a three hundred sixty (360) day year and charged for the actual number of days elapsed.

(e)    <u>Default Interest Rate.</u>        If the Reorganized Debtors commit an Event of Default (as defined under the Loan Documents) after the Effective Date, the Lender shall have all rights and remedies under the Loan Documents, including the right to increase the interest rate 500 basis points per annum over and above the Interest Payment Rate (set forth below) during the existence of such Event of Default. In no event shall default interest exceed any applicable lawful rate of interest that would make the interest rate usurious under the laws applicable to the Note evidencing the indebtedness.

(f)    Notwithstanding anything contained in the Plan or Confirmation Order to the contrary: If the Reorganized Debtors are in Default (as defined below), Lender may (at its option) immediately accelerate payment of the Note and post the Property for foreclosure, and foreclose its liens in the Property and other collateral and enforce all of its rights under the Loan Documents. However, if Lender gives notice of Default, posts the Property for foreclosure or accelerates the Note and enforce all of its rights under the Loan Documents, either the Reorganized Debtors or Lender may, at the sole option of either of them, file a motion with the Bankruptcy Court for a determination of the Reorganized Debtors Default ("<u>Default Motion</u>"). The Reorganized Debtors and the Lender consent to the other party's request to have their Default Motion heard by the Bankruptcy Court on an emergency basis on no less than three (3) business days' notice. It is not necessary to serve the Default Motion or give notice of any hearing thereon to any person, except to the Reorganized Debtors and Lender and their respective counsel of record. If the Bankruptcy Court finds Default to exist, the Court shall, upon Lender's request, order the Reorganized Debtors to immediately turn over possession and control to Lender or its designee (including a state court receiver) the Property, all records related to the Property and all rents in the possession of the Reorganized Debtors or which thereafter may come into the possession of the Reorganized Debtors. If the Court finds that no Default exists on hearing of the Default Motion, Lender shall withdraw its posted foreclosure and notice of default and acceleration, without waiver or impairment of its rights to give notice of Default and/or acceleration, post for foreclosure, file a Default Motion and foreclose in the future, if it determines the Reorganized Debtors are thereafter in Default. Reorganized Debtors shall not do anything to interfere with Lenders foreclosure, except to defend Lenders contention that Default exists at any hearing on the Default Motion if they, in good faith, believe they are not in Default. The Reorganized Debtors may not file another bankruptcy within the earlier of (a) indefeasible payment in full of the Class 1 Claim or (b) eighteen (18) months after the Transaction Date, but if one is filed or the automatic stay (11 U.S.C. § 362) comes into effect for any reason at any time, the automatic stay shall automatically terminate as to Lender (or its successor) without the necessity of any action or order of the Bankruptcy Court and the Bankruptcy Court shall follow and implement the above procedure, even if the Default occurs after the new Bankruptcy Proceedings of Reorganized Debtors is filed or automatic stay goes into effect. Reorganized Debtors and/or their successor in interest to ownership of the Property may file bankruptcy proceedings only in this

Bankruptcy Court and only after the time period defined above. The purpose of this section is to make sure that, if the Reorganized Debtors are in Default, nothing will be done to interfere with Lenders right to take possession of its collateral and the records related thereto and foreclose its lien, without interference or delay caused by the Bankruptcy Code, Reorganized Debtors or for any other reason. Reorganized Debtors agree that they will cooperate as necessary to assist in carrying out the purpose and intent of this section, if they are in Default, since they have been given ample opportunity to protect their interest in the Property and other collateral of Lender and reorganize. The Bankruptcy Court retains jurisdiction to enforce and give effect to this provision of the Plan while any amount remains owing to Lender by Reorganized Debtors.

"Default" means failure to (i) make a payment due under the Loan Documents, including but not limited to monthly interest payments, payment in full of the Note on the Maturity Date, payment of tax and insurance escrows as required by the Loan Documents, (ii) maintain insurance on the Property as required by the Loan Documents, (iii) provide reports as required by the Loan Documents within 10 days of the date they are due under the Loan Documents, (iv) any transfer of the Property or use of cash in violation of the Loan Agreements, and (iv) any other Events of Default agreed to by Lender and Debtors, but if Lender and Debtor cannot agree to the inclusion of an Event of Default as a Default, they shall abide by the recommendation of Bankruptcy Judge Hale of the Northern District ("Judge Hale") as to what Events of Default should be included as a Default for purposes of this section.

As long as any amount remains unpaid under the Note, Reorganized Debtors shall make payments from rents from the Property, now held or hereafter collected, only in accordance with the Plan. The management agreement between Reorganized Debtors and Quatrefoil shall not be amended to increase the management fee while the Note remains unpaid.

The Effective Date of the Plan shall be the date the Lender and the Reorganized Debtors execute all documents the Reorganized Debtors and the Lender require to be executed to effectuate the terms of the Plan and any order confirming such Plan, unless extended by the Court or agreement of Debtors and Lender (the "Closing Date").

The Lender and Debtors will use their best efforts to have the Closing on the Transaction Date; however, the Closing shall not be later than February 28, 2011 unless that time is extended on recommendation of Judge Hale. In any event, all closing documents shall be dated as of the Transaction Date and shall be effective as of that date for all purposes.

Lender relies upon the subordination agreements executed by certain Class 3 Claimants that are insiders of the Debtors as well as the deferment agreement that was executed by Amerisphere Mortgage Financial, LLC.

(g)    Escrow Amounts.    The Reorganized Debtors shall continue to escrow taxes and insurance on a monthly basis as provided for in the Loan Documents.

(h)    The Debtors shall use cash on hand as of the Transaction Date as follows:

   a. $100,000 to be paid upon the Effective Date to the Lender as a loan modification fee which shall not be applied to the payment of the Lender's Class 1 Claim (the same fee described in subsection (b) above);

   b. $150,000 to be paid to the Lender upon the Effective Date to the Lender to reduce the Lender's Class 1 Claim;

   c. $100,000 for the Debtor's professional fees, so long as such fees are approved for payment by the Bankruptcy Court and Lender will not object to such professional fees unless they exceed $100,000;

   d. $50,000 to be paid to the Lender upon the Effective Date to be deposited into an capital expense escrow account with Lender, and released upon the Debtors' compliance with the Loan Documents for release of such funds and no further amounts shall be deposited to the capital expense escrow account following the Effective Date; and

   e. If remaining cash (as of the Transaction Date) over and above the total (before deducting the line items above) exceeds $650,000, such excess is to be paid to the Lender upon the Effective Date to reduce the Lender's Class 1 Claim; provided, however, that any cash that represents the difference between the line items above (a-d) and $650,000, $150,000 shall be utilized only to pay the HUD commitment fee and other expenses related to filing the HUD application and obtaining a commitment for HUD financing and the rest can be used for any other purpose under the Plan.

The principal amount of the Note of the Debtors payable to Lender as of the Transaction Date shall be in the amount of $22,419,752. Such principal amount of the Note shall be reduced by the $150,000 payable under (b above) and amounts over $650,000 payable under e above) when received by the Lender. However, if the sums payable to Lender under subparagraphs (b) and (e) above are paid within one business day after Effective Date, they shall be credited by Lender on the principal owing under the Note as of the Transaction Date and the balance owing on the Note (after such credit) shall be the "Principal".

(i)    The Reorganized Debtors shall continue to escrow taxes and insurance on a monthly basis as provided for in the Loan Documents.

(j)    Cap Ex Reserve.    Sections 1.1.4(e)-(f) in the Loan Agreement references a Cap Ex Reserve in the amount of $200.00 per year for each unit. On

the Effective Date, the Reorganized Debtors shall fund $50,000.00 to the Cap Ex Reserve for the purpose of paying Approved Cap Ex Expenses.

(k)     Single Purpose Entity Roll-Up.     Further, it shall not be an Event of Default (as defined in the Loan Documents) for the Reorganized Debtors to effectuate a "roll-up" of their entities into a single special purpose entity. Any new entity created as a roll-up for the two Reorganized Debtors for the purpose of satisfying any HUD underwriting requirement shall be into an entity that would assume all responsibility, liability and obligations of both Reorganized Debtors under the Loan Documents as modified by the Plan and subsequent amendments and the Plan and Confirmation Order. Lender has authority to change financing statements as necessary. Reorganized Debtors will give Lender 30 days advance notice of a roll-up and the details of the roll-up. This provision is likely only to be taken in connection with a proposed refinance.

(l)     Any terms not otherwise modified by the Plan, as modified herein, or the Confirmation Order, shall remain consistent with the Loan Documents. The Loan Documents shall be modified to be consistent with the Plan and shall evidence, secure, govern and control Reorganized Debtors obligations to Lender. The Lender shall retain its lien in the Property and other assets of the Reorganized Debtors until it is paid its Secured Claim in full. The description of the Loan Documents stated above describes the principal loan agreements, but there are other loan documents such as financing statements that shall also continue to apply to the Reorganized Debtors and shall be modified as necessary. If monthly reporting requirements are not in the Loan Documents, they will be added as necessary to assure Lenders receipt of monthly reports on income and disbursements related to the operation of the Property. The Reorganized Debtors shall provide Lender with a one year budget by March 1, 2011, showing the detail of all anticipated income and expenses (including capital expenses), on a monthly basis, and shall report actual income and expenses monthly next to the budgeted amounts in addition to any reporting required by the Loan Documents. Lender will prepare a draft of the loan modification agreement and furnish it to the Reorganized Debtors' counsel for review and reasonable approval.

The Class 1 Claim is impaired.

5.2     Administrative Convenience Class: (Class 2) – The Class 2 Administrative Convenience Claims consist of all Allowed Unsecured Claims of $1,000 or less, as well as all Class 3 Allowed General Unsecured Claims in excess of $1,000 whose holders elect to reduce their claims to $1,000 to be treated as a Class 2 Administrative Convenience Claimant. Allowed Class 2 Administrative Convenience Claims shall be paid, at their option, as follows:

Option 1:     80% of their Allowed Claims in cash within thirty (30) days of the Effective Date of the Plan; or
Option 2:     100% of their Allowed Claims to be paid on or before the six (6) month anniversary of the Effective Date.

To the extent Class 2 Administrative Convenience Claims do not vote, or do not elect either Option 1 or Option 2, any Creditor holding a Class 2 Administrative Convenience Claim shall be deemed to elect Option 1.

The Class 2 Administrative Convenience Claims are impaired under the Plan.

5.3     General Unsecured Claims:     (Class 3) —Class 3 Allowed General Unsecured Claims consist of all other Allowed Claims against the Villas Debtor not placed in any other Class. Creditors holding Allowed Class 3 General Unsecured Claims shall be paid 100% of their Allowed Claim out of Net Cash Flow, with payments being made on a quarterly basis on October 1, January 1, April 1 and July 1 of each year following the Effective Date. Such payments will be distributed on a Pro Rata basis from Net Cash Flow. Payment to the Class 3 Claims will be made upon the satisfaction of the Administrative Claims for professional fees approved pursuant 11 U.S.C. § 330, and Priority Tax Claims.

The Class 3 General Unsecured Claims are impaired.

5.4     Equity Interest Holders: (Class 4) – Class 4 Equity Interest Holders shall retain their interests in the Villas Debtor in exchange for funding administrative expense claims accrued during this case, including, without limitation, the Villas Debtor's attorneys' fees. In addition, to the extent any funds are needed to satisfy any payments on Administrative Claim, payment to Class 2 Administrative Convenience Claim that elects Option 1, or any other payments due on or within thirty (30) days of the Effective Date (the "Confirmation Funds"), Class 4 Equity Interest Holders will be required to remit their proportional share of the Confirmation Funds to retain their Class 4 Equity Interests or be diluted to allow the Class 4 Equity Interest Holders who contribute to the Confirmation Funds needed.

The Class 4 Interests are unimpaired.

5.5     Payments to the United States Trustee:  The Reorganized Villas Debtor shall pay its pro rata share of all quarterly fees of the United States Trustee until the Cases are closed.

## B.     Oak Gate Debtor.

5.1     Secured Claim of Lender: (Class 1) —The Class 1 Claim of Lender shall be treated as a first priority, fully perfected, and unavoidable Allowed Secured Claim, secured by Mira Vista Ranch and all of the other assets of the Reorganized Debtors. The Class 1 Claim shall be treated as provided in Section A5.1 above.

Class 1 Claims are impaired.

5.2     Administrative Convenience Class: (Class 2) – The Class 2 Administrative Convenience Claims consist of all Allowed Unsecured Claims of $1,000 or less, as well as all Class 3 Allowed General Unsecured Claims in excess of $1,000 whose holders elect to reduce

their claims to $1,000 to be treated as a Class 2 Administrative Convenience Claimant. Allowed Class 2 Administrative Convenience Claims shall be paid, at their option, as follows:

Option 1:     80% of their Allowed Claims in cash within thirty (30) days of the Effective Date of the Plan; or

Option 2:     100% of their Allowed Claims to be paid on or before the (6) six month anniversary of the Effective Date.

To the extent Class 2 Administrative Convenience Claims do not vote, or do not elect either Option 1 or Option 2, any Creditor holding a Class 2 Administrative Convenience Claim shall be deemed to elect Option 1.

The Class 2 Administrative Convenience Claims are impaired.

5.3     General Unsecured Claims:  (Class 3) – Class 3 Allowed General Unsecured Claims consist of all other Allowed Claims against the Oak Gate Debtor not placed in any other Class. Creditors holding Allowed Class 3 General Unsecured Claims shall be paid 100% of their Allowed Claims out of Net Cash Flow, with payments being made on a quarterly basis on October 1, January 1, April 1 and July 1 of each year following the Effective Date. Such payments will be distributed on a Pro Rata basis from Net Cash Flow. Payment to the Class 3 Claims will be made upon the satisfaction of the, Administrative Claims for professional fees approved pursuant 11 U.S.C. § 330, and Priority Tax Claims.

The Class 3 General Unsecured Claims are impaired.

5.4     Equity Interest Holders: (Class 4) – Class 4 Equity Interest Holders shall retain their interests in the Oak Gate Debtor in exchange for funding administrative expense claims accrued during this case, including, without limitation, the Oak Gate Debtor's attorneys' fees. In addition, to the extent any funds are needed to satisfy any payments on Administrative Claim, payment to Class 2 Administrative Convenience Claim that elects Option 1, or any other payments due on or within thirty (30) days of the Effective Date (the "Confirmation Funds"), Class 4 Equity Interest Holders will be required to remit their proportional share of the Confirmation Funds to retain their Class 4 Equity Interests or be diluted to allow the Class 4 Equity Interest Holders who contribute to the Confirmation Funds needed.

The Class 4 Interests are unimpaired.

5.5     Payments to the United States Trustee:  The Reorganized Oak Gate Debtor shall pay its pro rata share of all quarterly fees of the United States Trustee until the Cases are closed.

## ARTICLE VI
## MEANS OF IMPLEMENTING THE PLAN

6.1     Operation of Debtors' Business.  The assets of Oak Gate Debtor vest in Reorganized Oak Gate and the assets of Villas Debtor vest in Reorganized Villas, subject to the

liens, deeds of trust and security interests of Lender and the terms of this Plan. The Reorganized Villas and Reorganized Oak Gate Debtors shall operate Mira Vista Ranch following the Effective Date, and shall dedicate sufficient revenues to fund all obligations contained herein. The Reorganized Villas Debtor and the Reorganized Oak Gate Debtor shall continue to operate under the existing management agreement with The Quatrefoil Group, Inc. to provide management services.

6.2    Reorganized Debtors.  Upon the Confirmation Date of the Plan, each of the Reorganized Debtors shall be the survivor of each of the Debtors.

6.3    Documents:  All necessary documents for the implementation of this Plan shall be executed by all necessary parties in interest on the Effective Date, unless an earlier date is provided for a particular document or documents under this Plan.  To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to Judge Hale for review and Lender and Reorganized Debtors will abide by his recommendations.  Upon the Effective Date, or as soon as practicable thereafter the Court shall have resolved said issues, and all such documents shall be binding on the Debtors, the creditors, and all other parties hereto.

6.4    Rights Under 1129(b):  If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtors will seek confirmation under the cram down provisions of § 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of § 1129(b) of the Bankruptcy Code in that event.

## ARTICLE VII
## PROVISIONS FOR THE REJECTION OF
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    General Assumption of Executory Contracts:  All executory contracts and unexpired leases of the Debtors (including, but not limited to, those lease agreements listed on the Debtors' Schedules) which are not expressly rejected on or before ninety (90) days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date.  The Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to section 365 of the Bankruptcy Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors, or the Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that any of the Debtors, or the Debtors-in-Possession have any liability thereunder. The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption under section 365 of the Bankruptcy Code as of the Effective Date.  The Reorganized Debtors shall continue to have all rights of assignment contained in 11 U.S.C. §365 of any executory contract or unexpired lease following confirmation of this Plan.

7.2    Cure of Defaults:  The Reorganized Debtors shall cure all defaults existing under

any assumed Executory Contract pursuant to the provisions of sections 1123(a)(5)(G) and 365 (b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtors may pay such amount as may be agreed upon between the Reorganized Debtors and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within fifteen (15) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if, the Reorganized Debtors file, within sixty (60) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing in respect of the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtors on the later of: (i) ten (10) Business Days after the expiration of the sixty (60) day period for filing an objection with respect to any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order. The Debtors believe that no such cure claims will exist.

7.3    Claims for Damages:  Any claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the applicable Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as an unsecured claim against the Reorganized Debtors. Any claim not filed within such time will be forever barred from assertion against the Debtors or their Estates.

7.4    Reservation of Rights:  The Debtors reserve the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

7.5    Proofs of Claim:  Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

## ARTICLE VIII
## MODIFICATION OF THE PLAN

8.1    Amendments Prior to Confirmation Date:  The Debtors may modify the Plan prior to Confirmation, and the Plan, as amended, shall become the new Plan of Reorganization.

8.2    Amendments After Confirmation Date:  The Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the

Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3     Effect on Claims:  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX
## RETENTION OF JURISDICTION

9.1     Purposes:  Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 cases for the following purposes:

i.      to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

ii.     to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or this Plan;

iii.    to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any of the Debtors are a party or with respect to which they may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.     to hear and determine any and all actions initiated by any of the Reorganized Debtors, whether by motion, complaint or otherwise;

v.      to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.     to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.    to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii. to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix. to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x. to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii. to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

xiii. to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

xiv. to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi. to enter a Final Order and final decree closing the Chapter 11 Cases.

xvii. to hear and determine all matters coming before the Court under Article V, Section A5.1(f) and B5.1(f).

9.2 <u>Exclusive Jurisdiction</u>: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

9.3 <u>Abstention</u>: If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in this Article IX, this Article IX shall have no effect upon and shall not control, prohibit or

limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

9.4     Closing of Cases:  The Reorganized Debtors shall file an application for final decree and to close the Chapter 11 Cases and set a hearing no earlier than the earlier of (a) indefeasible payment in full of the Class 1 Claims or (b) eighteen (18) months  after the Transaction Date.  The cases shall not be closed before one of those two dates shall have passed. Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Chapter 11 Cases, and jurisdiction shall be retained over such proceeding.

## ARTICLE X
## CAUSES OF ACTION

10.1     Retention of Causes of Action:  All Claims and Causes of Action owned by the Debtors, Causes of Action that could have been brought by a Creditor on behalf of the Debtors, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code.  The Reorganized Debtors shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval.   Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.  Debtors have no claims or Causes of Action against Lender and Wrightwood Capital Lender, L.P. and no claims or Causes of Action against them are preserved.

## ARTICLE XI
## RESOLUTION OF UNDETERMINED CLAIMS

11.1     Procedure:  Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtors may file with the Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or Interest to which such objection pertains.  Unless otherwise ordered by the Court, the Reorganized Debtors shall litigate to judgment, settle or withdraw objections to contested claims.

11.2     Allowance of Claims:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Debtors make any distributions to creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the order allowing such claim, and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

11.3   Rights of Creditors:   Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held or reserved by the Reorganized Debtors with respect to such claim.

**ARTICLE XII**
**GENERAL PROVISIONS**

12.1   Certain Rights Unaffected:   Except as otherwise provided herein, any rights or obligations which the Debtors' creditors may have among themselves as to their respective claims or the relative priority or subordination thereof.

12.2   Headings:   The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affects the terms, provisions or interpretations of this Plan.

12.3   Severability:   Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4   Governing Law:   Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5   Successors and Assigns:   The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6   Discharge of Claims:   Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against the Debtors and the Reorganized Debtors or any of their assets or properties to the extent permitted by section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtors shall be, and shall be deemed to be discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtors or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

12.7   Discharge of Debtors:   Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors or any of their assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtors shall be deemed discharged and released to the extent permitted by section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to

demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of the claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors. Except as provided herein, pursuant to section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtors of any Claims discharged or otherwise provided for in this Plan, or the property of any of the Debtors, to the extent it relates to a Claim discharged.

12.8    Exculpations: The Debtors' professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9    Injunctive Relief: Except as provided herein, on and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Bankruptcy Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtors in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

12.10    The lawsuit filed against the guarantor, Anthony C. Waiss, Jr., in Illinois shall be dismissed without prejudice within 10 days after the Effective Date. If Lender deems it necessary, Weiss shall execute a tolling agreement tolling all limitations, laches and statutes of repose under the guaranty for a period of 15 months following the Effective Date. Guarantor shall also agree that the amendment of the Loan Documents by the Plan shall not relieve him of liability. The injunctive relief provided to the guarantor herein shall automatically terminate upon foreclosure of Lender's liens in the Property or on the Maturity Date, whichever first occurs.

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, NEITHER THE GUARANTORS, INSIDERS, OFFICERS, DIRECTORS, EMPLOYEES NOR THE INTEREST HOLDERS OF THE DEBTORS SHALL BE DISCHARGED AND RELEASED FROM LIABILITY, IF ANY, FOR CLAIMS AND DEBTS ARISING UNDER OR IN CONNECTION WITH THE DEBTORS OR THESE CHAPTER 11 CASES AND/OR OTHERWISE ADDRESSED AND/OR TREATED IN THIS PLAN, HOWEVER, ABSENT FURTHER COURT ORDER UPON NOTICE AND HEARING, THE EXCLUSIVE REMEDY FOR PAYMENT OF ANY CLAIM OR DEBT ADDRESSED IN THIS PLAN, SO LONG AS THE PLAN IS NOT IN DEFAULT, SHALL BE THE PLAN AND ALL PARTIES CLASSIFIED IN AND UNDER ARTICLES 4 AND 5 HEREIN ARE ENJOINED FROM TAKING ANY ACTION INCONSISTENT HEREWITH, INCLUDING, BUT NOT LIMITED TO, ANY ACTION TO PROSECUTE OR COLLECT ANY DEBT OR CLAIM AGAINST ANY GUARANTOR, INSIDERS, OFFICER, DIRECTOR, EMPLOYEE OR INTEREST HOLDER. TO THE EXTENT**

NECESSARY, ANY APPLICABLE STATUTE OF LIMITATIONS AGAINST COLLECTION FROM ANY THIRD PARTY IS SPECIFICALLY TOLLED FROM THE PERIOD OF TIME FROM THE PETITION DATE UNTIL THE DATE UPON WHICH THE DEBTORS FAIL TO CURE ANY WRITTEN NOTICE OF DEFAULT AS SET FORTH IN THE PLAN AND/OR IN ANY APPLICABLE LOAN DOCUMENTS.

Dated: February 11, 2011

Mira Vista Villas, L.L.C.

By: _____
      Katherine Goodwin,
      Vice President of Villas of Plano,
      GP, L.L.C., General Partner of Villas
      of Plano, L.P.

Mira Vista Oak Gate, L.L.C.

By: _____
      Katherine Goodwin
      Vice President of MUM, L.L.C.,
      General Partner of Oak Gate
      Apartments, Ltd.

Filed and submitted by:

/s/ Vickie L. Driver
Vickie L. Driver
State Bar No. 24026886
**Coffin & Driver, PLLC**
7557 Rambler Road
Suite 110
Dallas, Texas 75231
Telephone: 214.377.4848
Facsimile: 214.377.4858
Email: vdriver@coffindriverlaw.com

**COUNSEL FOR DEBTORS**